JUDGE BAER

**08 CV 02209**

Mark K. Schonfeld
Regional Director (MS-2798)

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281

RECEIVED MAR 05 2008 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

DOUGLAS M. BEAHM AND JAMES P. CRILLY,

Defendants.

08 Civ. ____ (___)

COMPLAINT

---

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges the following against defendants Douglas M. Beahm ("Beahm") and James P. Crilly ("Crilly") (collectively, the "Defendants"):

### SUMMARY

1. This action involves unlawful insider trading in the securities of Del Laboratories, Inc. ("Del"), by Beahm and Crilly prior to the announcement on July 2, 2004, that Kelso & Co. ("Kelso") and Church & Dwight, Inc. ("C&D") had reached a definitive agreement to acquire Del. At the time, Beahm was working as a consultant for C&D, his former employer, to assist C&D in its acquisition of Del, and had participated directly in C&D's efforts to acquire Del.

Beahm owed a duty of trust and confidentiality to C&D with respect to any information he learned about Del while working as a consultant at C&D.

2. On June 25, 2004, one week prior to the acquisition announcement, Beahm purchased 500 shares of Del through his online retirement account. After placing his own trades, Beahm tipped his friend and former C&D supervisor, Crilly, about the acquisition, and based on that tip Crilly purchased 3,000 Del shares.

3. After the acquisition announcement, Del's shares closed significantly higher, jumping from $30.17 on July 1, 2004, to $34.51 on July 2, 2004, the date of the announcement, a 12% increase. By trading in advance of the public announcement of the acquisition agreement, Beahm profited by $2,046.58, and Crilly profited by $11,388.

## VIOLATIONS

4. By virtue of the conduct alleged herein, the Defendants have engaged, directly or indirectly, singly or in concert, in transactions, acts, practices, and courses of business that constitute violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder. Unless the Defendants are permanently enjoined and restrained, they will engage again in the transactions, acts, practices and courses of business set forth in this Complaint and in transactions, acts, practices and courses of business of similar type and object.

## JURISDICTION AND VENUE

5. The Commission brings this action pursuant to its authority under Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking a judgment: (a) permanently enjoining each Defendant from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; (b) ordering Defendant Beahm to disgorge his illicit profits plus pre-judgment

interest thereon; (c) ordering Defendants Beahm and Crilly, jointly and severally, to disgorge Crilly's illicit profits plus pre-judgment interest thereon; (d) imposing a civil penalty against each Defendant, pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and (e) ordering such other relief as the Court may deem appropriate.

6.  The Defendants, directly or indirectly, singly or in concert, have made use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein. Certain of the relevant conduct, transactions, acts, practices, and courses of business occurred in the Southern District of New York. Specifically, during the time of the conduct at issue, shares of Del were traded on the American Stock Exchange ("AMEX"), an electronic stock market located in the Southern District of New York. Accordingly, this Court has jurisdiction over this action, and venue is proper in this district, pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

## THE DEFENDANTS

7.  **Beahm**, age 54, is a resident of Idaho Falls, Idaho. He was employed by C&D from 1989 to June 2000, and was Vice-President of Category Marketing at C&D from April 1999 to June 2000. Since that time Beahm has worked as a consultant, and did so for C&D in the second half of 2000, and again from May 2004 through June 2004 on the Del acquisition.

8.  **Crilly**, age 65, is a resident of Glen Gardner, New Jersey. He was the Senior Vice-President of Sales for C&D, and Beahm's direct supervisor, from 1995 until his retirement in 1999.

3

## RELEVANT ENTITIES

9. **Del**, a Delaware corporation, operated in two business segments – cosmetics and over-the-counter pharmaceuticals – and reported 2003 sales of $386 million. Among Del's product lines were Sally Hansen, LaCross, and Orajel. During the time of the activities alleged herein, the common stock of Del was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the AMEX under the symbol "DLI." After the acquisition by Kelso, Del ceased to be traded.

10. **Kelso**, a New York based private equity firm, announced its agreement with C&D and Del to acquire Del on July 2, 2004. Subsequently, on January 27, 2005, Kelso, through a wholly-owned holding company, acquired Del.

11. **C&D**, a New Jersey based corporation, is a consumer products company which makes, among other things, Arm & Hammer baking soda. C&D along with Kelso was party to the July 2, 2004, agreement to acquire Del. Subsequently, C&D withdrew from the acquisition agreement leaving Kelso to purchase Del alone.

## FACTS

### C&D Retains Beahm as a Consultant to Assist with the Acquisition of Del

12. On or about May 24, 2004, Beahm was hired by C&D as a consultant in connection with the possible acquisition of Del by C&D and Kelso. As a consultant, Beahm performed various services related to the Del acquisition, including validating certain category market share representations made by Del, participating in meetings concerning the Del acquisition, visiting Del's offices to perform due diligence, and having discussions with certain Del managers who planned to remain as part of the combined entity. Beahm performed services related to the Del acquisition through June 30, 2004. By virtue of being C&D's consultant,

Beahm learned that Del was looking to be acquired and that C&D and Kelso were engaged in acquisition negotiations with Del.

13.     As C&D's consultant, Beahm owed C&D a duty of confidentiality with respect to any information he acquired about the potential Del acquisition. Beahm was aware of this duty of confidentiality having been subject to it previously both as an employee and as a consultant for C&D. In addition, Beahm was aware that information about the Del acquisition negotiations was confidential and non-public because of the steps C&D took to maintain the confidentiality of the negotiations, including giving the Del acquisition a code name.

**A Definitive Acquisition Agreement Is Reached Between Del, Kelso and C&D**

14.     In late March 2004 Kelso and C&D began negotiations to acquire Del. On June 22, 2004, C&D and Kelso submitted a written, non-binding, proposal to Del to acquire 100% of the outstanding shares of Del common stock in a one-step cash merger. On June 23 and 24, 2004, Kelso and C&D advised Del orally that they were willing to increase the purchase price per share of Del common stock, and on June 25, 2004, Kelso and C&D submitted a binding proposal to buy all of Del's shares for $35.00 per share.

15.     From June 25, 2004, through June 30, 2004, C&D and Kelso completed their due diligence of Del. During that time, and through July 1, representatives of Del, Kelso, and C&D negotiated the terms of the merger agreement that the parties executed on the evening of July 1, 2004. The deal was announced publicly on July 2, 2004. Under the terms of the agreement, Kelso and C&D, through a jointly formed holding company, were to acquire all outstanding shares of Del at a price of $35.00 per share, subject to shareholder approval. Following the public announcement, but prior to the shareholder vote, C&D withdrew from the acquisition, leaving Kelso to acquire Del on its own.

16.     The acquisition negotiations were highly confidential, and the transaction was not disclosed to the public at any time prior to the July 2, 2004, announcement.

**Beahm Tips Crilly, and Both Trade**

17.     On Friday, June 25, one week before the announcement and on the same day C&D and Kelso submitted a binding acquisition proposal to Del, Beahm purchased 500 shares of Del through his online retirement account. This was Beahm's first purchase of Del stock.

18.     After purchasing his own shares of Del, Beahm called his friend Crilly and tipped Crilly that Del was a potential acquisition target.

19.     Crilly had maintained a personal friendship with Beahm since leaving C&D, where Crilly had been Beahm's immediate supervisor. The two spoke two to three times per week, and previously had pursued various business deals together, including an unsuccessful attempt to purchase a Del competitor. In addition, prior to the July 2, 2004, announcement, Beahm and Crilly had discussed the possibility of jointly purchasing Del spinoffs from Kelso in connection with C&D and Kelso's acquisition of Del.

20.     After speaking with Beahm, on June 29, 2004, Crilly purchased 3,000 Del shares: 2,000 through his own account and 1,000 through a joint account with his wife. This was Crilly's first purchase of Del stock.

21.     At the time of the transactions and events described herein, Beahm had a fiduciary duty, or other duty arising out of a relationship of trust and confidence, to keep confidential the information he obtained in the course of his employment as a consultant for C&D. In addition, Beahm had a fiduciary duty, or other duty arising out of a relationship of trust and confidence, to refrain from using for his own advantage or benefit information he obtained during the course of his work as a consultant for C&D.

22. By virtue of the facts and conduct described above in paragraphs 12 to 21, Beahm breached a fiduciary duty, or other duty arising out of a relationship of trust and confidence, he owed to C&D.

23. Given Crilly's close personal and business relationship with Beahm, the prior employment of both at C&D, Crilly's experience in the industry, and the discussions between the two about possibly acquiring Del spinoffs from Kelso in connection with the Del acquisition, Crilly knew, or was reckless in not knowing, that Beahm owed a fiduciary duty or other duty of trust and confidence to C&D.

24. By virtue of the facts and conduct described above in paragraphs 12 to 23, Crilly knew, or was reckless in not knowing that Beahm had tipped Crilly in breach of a fiduciary duty or other duty of trust and confidence Beahm owed to C&D.

**Beahm and Crilly Each Profit From Their Trades**

25. On June 25, 2004, Beahm purchased 500 shares of Del at an average price of $30.30, for a total purchase price of $15,165. On June 29, 2004, Crilly purchased 3,000 shares of Del at an average price of $30.65, for a total purchase price of $91,959. On July 2, 2004, Del publicly announced the proposed acquisition by Kelso and C&D for $35 per share; Del's stock rose to a high of $34.60, and closed at $34.51. Both Beahm and Crilly sold the day of the announcement, resulting in a profit to Beahm of $2,046.58 and to Crilly of $11,388.

**CLAIM FOR RELIEF**

**Violations of Section 10(b) of the Exchange
Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5
Against both Defendants**

26. The Commission repeats and realleges the allegations contained in paragraphs 1 through 25 by reference as if fully set forth herein.

27. Defendants, directly or indirectly, singly or in concert, knowingly or recklessly, by the use of the means or instrumentalities of interstate commerce, or by the use of the mails, or of any facility of any national securities exchange, in connection with the purchase of Del securities: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of, or otherwise made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices, and courses of business which operated or would have operated as a fraud or deceit upon C&D, or upon sellers or purchasers of Del securities, and upon other persons.

28. As part and in furtherance of his violative conduct, Beahm, knowingly or recklessly, for his direct or indirect benefit, in breach of a fiduciary duty to C&D, or other similar duty arising out of a relationship of trust and confidence with C&D, purchased shares of Del stock, on June 25, 2004, while in possession of material non-public information that Del was looking to be acquired and that C&D and Kelso were engaged in acquisition negotiations with Del.

29. As part of and in furtherance of his violative conduct, Beahm, knowingly or recklessly, for his direct or indirect benefit, in breach of a fiduciary duty to C&D, or other similar duty arising out of a relationship of trust and confidence with C&D, tipped his friend Crilly that Del was going to be acquired.

30. On June 29, 2004, when Crilly purchased Del stock, he knew, or acted with reckless disregard of the fact, that: (a) Beahm was aware of material, non-public information concerning the Del acquisition; (b) Beahm tipped Crilly that Del was going to be acquired; and (c) Beahm's conveyance of this material non-public information to Crilly constituted a breach of

fiduciary duty, or other similar duty arising out of a relationship of trust and confidence with C&D, that Beahm owed to C&D.

31. Defendants profited illegally from their purchase and sale of Del securities.

32. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, violated and, unless permanently enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## **RELIEF SOUGHT**

**WHEREFORE**, the Commission respectfully requests that this Court issue a Final Judgment:

### I.

Permanently enjoining Defendants, their agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

### II.

Ordering Defendant Beahm to disgorge the ill-gotten gains he derived from his purchases of Del securities, and ordering Defendants Beahm and Crilly to disgorge, jointly and severally, the profits Crilly derived from Crilly's purchases of Del securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, and to pay prejudgment interest thereon;

**III.**

Ordering Defendants to pay civil money penalties pursuant to Section 21(d) and 21A of the Exchange Act [15 U.S.C. § 78u(d)(3) and § 78u-1]; and

**IV.**

Granting such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
       March 4, 2008

                                          Mark K. Schonfeld (MS-2798)

                                          _____
                                          Attorney for Plaintiff
                                          SECURITIES AND EXCHANGE COMMISSION
                                          New York Regional Office
                                          3 World Financial Center
                                          New York, New York 10281
                                          (212) 336-1020

Of Counsel:

David Rosenfeld
David A. Markowitz
Lee S. Bickley
Cynthia A. Matthews